Case number 24-1385 NL. James Riffin, Petitioner versus Surface Transportation Board and United States of America. Mr. Riffin for the Petitioner. Mr. Gloden for the Intervener. Good morning, Mr. Riffin. You may begin. You may begin. You are our guest. Good morning. I'm James Riffin. I'm your petitioner. I don't hear very well, so everything you've said so far, I couldn't understand anything you said. So if you do want to ask me a question, get my attention and then you have to speak up loud enough so I can at least hear you. But anyway, as I said, I'm James Riffin. I'm your petitioner. With your court's permission, I'm going to use most of my time in rebuttal. I'm going to rest with all the arguments that are sitting in my briefs. Mr. Riffin? Mr. Riffin? You cannot engage in rebuttal on any arguments that are not discussed in the main argument, your argument here or the other side's argument. So there's a risk that if you don't argue anything now and the government says nothing now, you'll have nothing to discuss on rebuttal. So I'm going to suggest that you make your, you have a burden of proof here that you make your affirmative presentation. We will give you some time for rebuttal. Okay? Thank you very much, Your Honor. Your court told me that, by the way. May I begin? Yes. As I said, I'm going to basically rest on what's in my briefs. This proceeding presents multiple issues. There's a very high probability that one of those issues will repeatedly be presented to this court until this court rules on that issue. In Railroad Ventures, the Sixth Circuit held that whatever assets a rail carrier has on the date that a rail carrier files an abandonment petition, an OFA offeror can acquire. I ask this court to determine a similar bright line date. When an OFA offeror acquires the right to file an OFA, an offer of financial assistance, upon which date a rail carrier no longer can withdraw an abandonment petition without an OFA offeror's consent. I argue the appropriate date is the date an OFA offeror is held to be preliminarily financially responsible, either presumptively or by STB decision. Determining that date in this proceeding will eliminate this issue from being raised in subsequent petitions for review, I would hope, either by me or by other petitioners. I say this because there is another proceeding before the STB currently where what happened in this proceeding also happened to it. Let me see if I've understood you. You said that the board should infer a deadline. I didn't say infer. I said this court should determine. Under LOPER, it is this court's obligation now. That we should infer, because there is not an actual deadline for the rail carrier to turn over the information you seek, right? I'm not asking, I'm not talking about the information that a rail carrier is obligated to provide. That's what I'm talking about. Okay. What I'm talking about is, when does an OFA offeror acquire the right to file an OFA? Filing it doesn't mean you're going to get it. It doesn't mean the board is going to approve it. But you acquire the right. I want a great line past which a carrier can no longer abandon its withdrawal, its application for abandonment. Is there anything in the statute that you can point to that supports that line? Or is this a practical argument that you're presenting us with? It's not in the statute. It's not in the regulations. It's never been before any court. It's never been decided by the board. In 2017. So on what basis do you suggest that we draw that line? On what date? On what basis, on what legal ground should we draw the line you oppose? There needs to be a point in time at which an OFA's rights vest. Now, as it turns out, the intervener actually suggested such a date in their issue. I'm going to read what their issue says and I'm going to change one word in it. This is what the intervener suggested. May the board permit a rail carrier to terminate abandonment proceeding that the rail carrier has initiated after, he said before, I say after, the board takes any action that binds the rail carrier. That's what the intervener suggested. I'm suggesting the same thing. There needs to be a is determined by when is the rail carrier bound to do something? When? Do you have a question? I do. In your filing to the board, you identified or you said that Norfolk's filing had false statements about the real estate. Yes, it did. And there you said voiding the notice would be the appropriate remedy. I said it would be an appropriate remedy if it was material and it's that word material is what's critical. You identified two factual misstatements that you described as material. I will agree with you. I will also point out that I believe one of the ones that I said was who owns the real estate under the line. This is another distinction. But let me just stick with that point for a moment. It seems to me you've already acknowledged that the board under its own regulations appropriately recognized that that notice was void. I hope I didn't imply that in the slightest because I didn't intend to. No, I do not think that the board did not render a decision. Ultimately, in this case, this decision doesn't comply with this Administrative Procedure Act since there's no basis for the decision. Let me ask you a question. Call it a hypothetical question here. After you filed your letter, identifying two, in your view, material misstatements that in your filing with the board said under the regulation would render that filing void ab initio. If the board had said, Mr. Riffin, you're right. We declare that notice of abandonment void. Would that have been a proper lawful thing for the board to do? It would have been and I wouldn't be here today. But that's not what the board did. I understand. That's a separate argument. I understand that point. So that would have been an act satisfactory outcome that would have addressed your concerns with that filing and the initiation of the process. Had the board taken that approach, it would have been an appropriate approach and I wouldn't be here contesting what they did because they would have said, we are going to void it because it contains false statements. In my original filing, I did point out all of that. I also said, in this particular case, while these are in fact false statements and they are somewhat material, they do not, they will not, they do not necessarily rise to the level that this whole proceeding needs to be voided. From day one, it has been my position all along. Norfolk Southern put in their abandonment exemption for false statements. I told them, I called up, I called up counsel for Norfolk Southern. I said, I think we're familiar with the record. You contacted them and then you filed with the board alerting it to this problem. So I think we're familiar with that. I just wanted to let you know, you're running low on time. If you want to rebuttal. What I wanted to say, I've already said, which is I'm looking for a bright line at which point in time a carrier can no longer withdraw their abandonment exemption petition. And the underlying reason for that is there needs to be a point at which a real carrier can no longer terminate a proceeding without consent. The underlying reason for that is what happens, what happened in this case and what is happening in this other case I've made reference to, which will probably wind up in this court. If you don't make that decision, you will get it presented to you again. An offeror makes an offer, an offeror begins the process. The carrier doesn't like what it sees. The carrier knows, oh, I might actually have to convey this line to this person under terms that I don't particularly like. Therefore, in order to prevent, to make it so that the carrier isn't obligated to do something the carrier doesn't really want to do, they just withdraw it. Now, the ultimate over your time. May I take 30 more seconds? I'll give you the 30 seconds. Thank you very much, Your Honor. Because this is the whole reason why this is important. It's what the Sixth Circuit said. When do your rights acquire with regard to what it is you have the right to acquire? It is on the day a petition is filed. Anything that happens after that date, you still get it. If the carrier disposes of it, if someone else takes something, their carrier is responsible. I made mention of that in a case in Mississippi. I think you're at your 30 seconds, so we'll let you follow up on rebuttal. Excuse me, your time is up, so maybe you sit down. We're going to hear from the other parties now, and then we'll give you a couple of minutes for rebuttal. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court? Jetta Sandin on behalf of Respondents. Your Honors, there is a point in time when a railroad is no longer allowed to withdraw its abandonment request. That point in time is set by the statute. 49. Can you hang on one second? Yes. I think Mr. Riffin, are you having trouble hearing? Is there anything that can be done to help him hear? I apologize. No worries. I want to make sure he gets to hear her. Agreed. Thank you very much. Thank you. Do you want to just say your name again just so we can make sure he can hear? I'm sorry to have you go through this. No worries. Jetta Sandin on behalf of Respondents. Could you hear that? Fantastic. Please proceed. Your Honors, the statute does set a point in time in which a railroad can no longer withdraw its abandonment notice. 49 U.S.C. Section 10904 establishes that once the board sets terms and conditions for sale of a line, it is within the offeror's right only to withdraw that. The railroad at that point in time is locked in. If the offeror wants to accept the terms and conditions that the board sets, the offeror has the right to purchase the And this makes sense in terms of the statutory scheme. The offer of a financial assistance program was established by Congress to preserve rail service, not to force the sale of a line. The entire point was if there is a line that a railroad wishes to abandon, to shed, to remove from the federal rail network, God bless you, that may still have use, a third party is allowed to come in through the OFA process and seek to purchase the line. Statutory purpose seems to be just to keep rail lines in service as much as possible. Correct, Your Honor. Seems indifferent whether that's done from the old carrier continuing to operate or through a forced or voluntary sale. Agree with you, Your Honor. It is definitely the purpose which has been decided by this court and courts to preserve rail service. And when a rail carrier withdraws its abandonment request, the line remains within the federal rail network. That rail carrier keeps its common carrier obligations. Exactly. Here the board was reasonable to allow Norfolk Southern to withdraw its own request for abandonment authority to correct errors in its filing, errors that Mr. Riffin identified and in fact referred to them as false and misleading. One of which, the statement that MTA operates passenger rail on the line, Mr. Riffin said was sufficient for the board to deem the notice void. He did suggest that the board at a minimum order Norfolk Southern to correct the errors in the notice of exemption. If the board concluded this case or another case that a notice of abandonment, notice of exemption I guess works in my head as notice of abandonment, was void for falsehoods on its own or otherwise, would the board then dismiss? It would, Your Honor. It would summarily reject the notice and dismiss the proceeding. And the board takes very seriously allegations of false and misleading statements of filings before the board. Had we continued down this process, the board would have investigated and potentially if found to be false and misleading, would have voided, the notice would have been void ab initio and the board by its own regulations is required to summarily reject that notice and end the proceeding. Dismiss, I mean it's a motion, I guess you just dismiss the motion. Correct. I'm interested in the board's practice of deciding motions by signed stamp. Yes, Your Honor. You say it's obvious that the termination order adopted the simple and straightforward reasons from Norfolk's motion, but you don't urge us to decide the case on that ground. Is there any reason the board would not adopt the full reasoning of Norfolk's motion as its decision? No, Your Honor. And when the board doesn't agree with the reasoning and rationale established in a request, the board has the ability to still grant stamp it, but note the disagreement, or we have a process through which we can issue the director of the office of chief counsel has the right to issue, when it's more routine matters, short decisions, and if it was a more complicated matter, it would go to the entire board for. So is there any guidance or anything written that explains the board's practice of what kinds of matters the board addresses in this way, or precedent showing that that practice has been sustained? To the best of my knowledge, Your Honor, this is the first time that a grant stamp has been challenged. The board's practice is to use grant stamps in routine matters. Here, the board has used grant stamps in the past to allow a railroad to withdraw. Has the board ever said that when we do this grant stamp, in doing so, we adopt every jot and tittle of the document so stamped as effectively our own words, our own decision? To the best of my knowledge, Your Honor, the board has not expressly stated that. That has just been the board's practice. Well, I mean, the board's practice might be to stamp documents and file them. Correct. I'm trying to understand a basis for a court to conclude that the board thereby says what he said or what she said. That's us speaking. Understood, Your Honor. The board does have a policy statement regarding its grant stamp usage. It talks about the use of the grant stamp in routine, straightforward matters. Is that something publicly available that we could find on the web or will you send it to us? It is both available on the website, Your Honor, and something I would be happy to send. We would be happy to submit to the court. Does it say anywhere in there? And that will then, you know, maybe it's routine things we don't need to explain or that means that we have adopted the underlying reasoning of the document. It talks about it being routine. It's not probably as satisfying as the court might like in terms of saying. It's not as satisfying. It's just we don't normally impute decisions, decisional rationales to agencies that they haven't expressed. Now, if they had a document somewhere that said, when you see us use stamp, that means that filing becomes our own words, our own rationale for action. If they haven't said that, then it's a little difficult for a court to say, we know what the board meant. I have no idea what the board meant. It sounds like this policy statement might not cast further light on that either as opposed to, I mean, the one word is that and that is granted. This thing's dismissed. Your Honor, the board's practice has been to grant stamp routine matters in which there is no sort of controversy. Here, though, to the extent the board. So, this is not so much a particular practice as what we do then if we're looking for an explanation by the board of its decision. And it may well be there's categories of things that thinks no explanation needed because they aren't typically challenged. As you said, this is the first instance, at least for this category. Correct, Your Honor. Of documents. But it sounds like what we can tell the board said is that this filing needs to be dismissed. I'm so sorry, Your Honor. I notice I am over my time. Okay. Is it fair at least to say they said this abandonment proceeding needs to be or appropriately is dismissed? Yes, Your Honor. And to the extent. It's a little dangerous to adopt everything that every filing. Absolutely, Your Honor. And that is why the board at times exercises its discretion not to use the grant stamp and will use what we call a director's order instead to grant a request. But to the extent that this court has concern over the rationale explained in the grant stamp or in the grant application, the board did fully examine all of the reasons and all the arguments offered by Mr. Riffin in its April 14th decision. That's if we think we have jurisdiction to consider the board's December order, then and not the second, then as the board treated it as a motion for reopening or reconsideration. But if we disagree with that, then we can't really consider the reasoning from April, right? Again, under Chenery, it's not the reason for the decision under review. Correct, Your Honor. But this court has in such cases like Salem versus NLRB, Salem Hospital, has considered agency's deviation from its rationale and considered due process concerns cured by the agency's reconsideration of its prior decisions. So if we view the filing that the board called a reconsideration and that he called a motion for a stay, if we view it as a motion for a stay, so his first petition, we have jurisdiction over that, we can go for it and decide that. Could we still look at what the board said in its decision on the motion, however characterized, to justify the first decision? Or does that mean it's off limits? Well, this court has looked at the rationale that in Salem Hospital versus NLRB that was articulated by the agency in its decision reconsidering the request. And even if the court were to consider it a petition to stay and not a request for reopening, the board has the authority under 49 U.S.C. 1322 to reconsider any of its decisions. And here... But we don't have the authority to review it if it doesn't substantively change the initial decision. Correct, Your Honor. Is it weird that we can adopt the reason or we can get knocked up as we consider the reasoning that we've said we can't review? You're correct, Your Honor, in that if this is a decision on reconsideration that does not ultimately change the underlying decision, that it is not reviewable under the Brotherhood of Locomotives decision. But this court has also recognized that in situations in which the agency's rationale is predetermined, where it is clear to this court that remanding would be a futile exercise, such as this court did in KPMG versus the SEC, the court has declined to remand the agency because they know what the agency would say, as is true here. I just pulled up the policy statement, and it says that the director uses the grant stamp procedure in routine unopposed matters. And is this, in your view, a routine unopposed matter? It is a routine matter.  It became unopposed. Prior to the board issuing that decision, Mr. Riffin did argue before the board in his November 25th comments that this notice contained false and misleading statements. And requested that the board, at a minimum, direct Norfolk Southern to amend its notice of exemption, but also commented that some of the statements that were false and misleading were sufficient enough to warrant this notice being deemed void ab initio, which would have required the board to have summarily rejected the notice. So rather than, because the board didn't have the opportunity to go ahead and fully vet whether or not the notice was void ab initio, Norfolk Southern came forward and reasonably requested to withdraw its notice so that it could correct the errors that Mr. Riffin himself was complaining about. The regulation seems very aggressive. It says shall dismiss, and it uses language that we would think of as jurisdictional, void ab initio. Do you take the regulation to give the agency discretion not to dismiss a statement, a notice with false and misleading statements? There is no discretion, your honor. Thank you. Okay. Subject to a materiality analysis? I mean, presumably if there's a grammatical mistake. Correct, your honor. The board has, when analyzing whether or not a false and misleading statement within a notice renders the notice void ab initio, they have definitely looked at materiality. And Mr. Riffin here says that MTA's statement about operating passenger rail on the line was indeed material. So given Mr. Riffin's filing, identifying at least two false statements that he characterized as material, if the board agreed, I mean, well, one, scratch that, before, I think that, I think I heard you say that's on grounds on which the board would have viewed the motion as unopposed. He said it was appropriate for the board to render a valid ab initio, which would require a stamp of dismissed. I said yes, your honor. Yep. Okay. Just one question about the, Mr. Riffin's argument about the preliminary financial responsibility regulation. You argue that doesn't create any new rights for offers, but the statute and the regulations use language that's mandatory. The rail carrier, quote, shall provide promptly, close quote, the certain information to the potential buyer. And then the regulation says an applicant must provide promptly upon request the information. So how can the, if the application had not been withdrawn, then there would have been an entitlement. Correct, your honor. And that's akin to like a discovery obligation. It doesn't rise to a level of a constitutionally protected property right. And just as a defendant has the right to answers to its discovery request during the pendency of a litigation, that's similar here. If the abandonment proceeding had continued, Mr. Riffin would have had the right to information about the valuation of the line from the railroad. But just as a defendant no longer has a right to a response to a discovery request, if a litigation is dismissed, any potential offeror no longer has the right to valuation information from the railroad if the abandonment proceeding has been dismissed. Has the board characterized that information request process as a discovery type procedure? I'm unaware of where the board has actually said those words, but it is an information request. With your offer, your expression of intent to file an offer of financial assistance, the potential offeror submits an information request. It is called an information request. All right. Thank you very much, counsel. And thank you for accommodating our technical issues at the beginning. Thank you very much for your time, your honors. Now, Mr. Glovin, on behalf of the intervenors. Good morning, your honors, and may it please the court. Grant Glovin on behalf of intervenor, Maryland Transit Administration. Mr. Riffin's petitions for review must be dismissed because Mr. Riffin lacked standing for three reasons. First, Circuit Rule 28A-7 requires dismissal because Mr. Riffin failed to develop an argument for standing beyond noting that he was a party to the STB proceeding in his opening brief. Second, Mr. Riffin could not have established standing if he tried because he did not suffer a redressable injury. Prior to our amendment, which didn't apply in this case, that people needed to address standing unless it was deemed obvious to them. He obviously thinks it's obvious. Yes, your honor. I'm not sure on what basis the local rule would. And that doesn't, local rule doesn't define standing, right? Just shows that he didn't make an argument. Yes, your honor. There is the exception for a reasonable but mistaken belief standing was inherent. However, that, any belief that Mr. Riffin had here that standing was established would not have been reasonable. And that's because he explained, he said repeatedly that when he filed his, what he styled his petition for stay below, it was for Norfolk Southern's benefit, not for his own benefit, that he would not receive any benefit. It was Norfolk Southern who would be subject to the obligations of being a common carrier on the line. But what about his first, the petition that he wants us to consider? He certainly wants to acquire. He not have standing for that. He certainly wants to acquire the line. And so that is, there's no doubt that if there was directly interfered with his ability to acquire the line, then that would give him standing. Well, his argument here is that the law requires a cutoff date for withdrawing a notice of abandonment. Had that notice, withdrawal of notice of abandonment not occurred here, he would have been able to go forward with his, I mean, he'd already submitted his information requests. He would have gotten that information and the proceeding would have gone forward. Is that correct? That's correct. Okay. So he says, I was entitled to get, I filed my thing. I got my presumptive status. I was entitled to get information and I was entitled to at least compete for, apply for, negotiate to, obtain real estate. How's that not either on informational grounds or a claim to compete for desired real estate that was satched away by the board's order in his view? How's that not a sufficient injury for standing? Your Honor, I'd identify a couple problems that would make that an insufficient injury. The first is that Mr. Riffin knew that Norfolk Southern intended to refile, that it was going away to correct the problems that had arisen in particular with regards to real estate ownership. And it had said at appendix page 59, I believe, that it was, it was intending to dismiss and refile its notice of exception. So Mr. Riffin knew that there was. Sorry, I'm still, I mean, I take it your argument is he might have standing again later to get these things, but I'm not aware of case law that says the fact that you might have standing in another proceeding doesn't mean you didn't have standing in this proceeding where you sought information that statute and regulation required to be disclosed to you, and you seek to compete to purchase real estate that you desire. It doesn't go away because I might get to do this again next week, does it? Or do you have a case that suggests that? Not in this exact context. I think I would characterize his injury slightly differently. And that's because I don't think the informational injury on itself is more than a procedural injury here to where his concrete interest was to acquire the line. The information is guaranteed under the statute. He wanted to obtain information that was about a piece of real estate he's interested in obtaining. That's a concrete interest. But the information could not be granted to him unless he was in the process of having an offer of financial, of preparing an offer of financial assistance. But you agreed with me that had the board not withdrawn its notice, or had the board not granted Norfolk Southern's motion to withdraw its abandonment notice, then he would have been entitled to that information. Yes. And he says, so he would have been entitled to that, and it's part of him purchasing real estate. And so, and he says the board engaged in legal error in doing that. And for purposes of analyzing standing, we assume the court was, that he's right about the so that he had a right to get this information and to go forward with this process to obtain real estate that was snatched away from him. Sounds like injury to me. It's not information void, even assume, I'm not sure that always matters anyhow. Freedom of information, I claim to have standing all the time without having to have any reason for wanting it other than I want it. The distinction with the Freedom of Information Act, to take that last bit first, is that Freedom of Information Act, this court has characterized it as a, as a statute that grants rights in the general public that they're the harm Congress sought to prevent was a lack of information itself. That's ethically Department of Commerce, 928 F3rd 95. And whereas in the offer of financial assistance statute, the information is provided to financial offerors. There has to be a ongoing process in which a financial offer is being prepared. And Mr. Riffin could, and this then connects to the other problems with Mr. Riffin's standing is he could not have gotten through that process because he would not be able to show a need for shipping on the line. But when he filed, I mean, again, as Judge Millett said, we assume that the plaintiff will prevail on their claim when we assess standing. And when he filed, none of those things had been, had been submitted. And so that you can't say that he should have known before he filed that the door would close the way it did. And I guess my question for you is, do you read the statute and or the board's regulations to, at any point in any circumstance, create an entitlement for a prospective buyer to receive information? Yes. As long as the process, as long as they are preliminary, excuse me, preliminarily financially responsible and the process is ongoing, there is an entitlement. So is your argument really a mootness argument? Because he didn't know the process wouldn't be ongoing when he filed. And certainly, if we're looking at that period, it just looks like we look at the standing as of the time of filing. Given the unusual posture in this case, where Mr. Riffin knew that Norfolk Southern was intended to refile, there was no reason to think Norfolk Southern was not going to refile as it stated its intent to do. I would say it is a standing problem, but I think it also does raise mootness concerns given the developments that Norfolk Southern actually did refile. Mr. Riffin did participate in that proceeding and sought to file a financial offer in that proceeding as well, in which he would be entitled to the same information. So you're back to your standing argument that if you might have standing in another dispute later, you don't have standing in this dispute? Not as a general rule. I think it is. We write general rules. That's what we do. So especially in something like standing, we don't have a specific one. Let me try it this way. Let's imagine this is hypothetical. The board didn't do it here. I'm not suggesting the board would do it. But if a new bad board came in, and he's filed exactly what he's filed here, and the board says, you should get this information because you are preliminarily financially responsible, but we don't like you, we're yanking this notice of exemption. Come back another time if they refile. Would you have standing to appeal that decision? Yes, your honor. Because it would be an unlawful decision, right? It would be unlawful for the board. With the caveat that there may be some distinction for a litigant who's treated so arbitrarily in a way that it signals out and potentially raises equal protection problems, honestly. The stronger the case on the merits, the more likely you are to have standing? My point with that caveat was more of a qualitatively different kind of case, that it's not about the board. I've asked you a question because it helps me to try to understand your argument here. And your answer, as I understood it, was he would have standing to challenge that. He would have standing because the key distinction between the hypothetical you raised in this case is the board in your hypothetical said, come back if the rail carrier refiles. Whereas here, the rail carrier said, we're going to refile. It didn't invite Mr. Griffin to come back then, but the board's procedures do. And the second distinction is that there wasn't the same problems in your hypothetical line with the you. Sorry. So you are definitely absolutely wedded to this. If you'll have another chance another time, you don't have standing now. In this particular case, because that other chance was so certain to occur. And then where did they say we definitely absolutely for sure are going to file again? Because that seems to be a clincher for your standing argument here. That would have been appendix page 59. That's in its reply to Griffin's petition for stay, in which it says the board should allow us to dismiss and refile. Wait, wait. That was after the board acted? You said that's a reply to a stay. It's certainly not in their motion to withdraw. That just says do it without prejudice, which people do when they might want to refile, but maybe not. Yes. They did not make it clear in their motion to withdraw. That's true. However, it is in the record. Yet the board acted and you want to say the board didn't injure him. He's right about the law because of something that was said in a reply opposing a stay motion or an opposition to a stay motion. And you want to say that goes to standing? I would say it can go to mootness as well. I thought you told Judge Pillar it was a standing argument. Excuse me if I was unclear. I think it can sound in mootness as well. I do think there is a standing issue, but I think the actual fact of Norfolk sentence refiling as well can be taken into account when considering this. So I'm still interested in your standing approach here. And so you said, so if I change my hypothetical to we're yanking this, we don't like you. We don't like women filing these things. You don't like men filing these things, whatever. Very bad board decision. And they said, we think you'll have a chance later. Looks like you'll probably have a chance to do this again. See you later. Then he can't challenge that board decision because they said, we think you'll get a chance to do this again later. He can challenge it. He has standing. He has standing for at least two reasons. And are we talking about the same rail line here or just the hypothetical rail line? I'm not talking about this one here. I told you this is a hypothetical question. I can't imagine why which rail line is going to affect standing. But if it does, tell me why. It does because it determines whether the injury from that Mr. Riffin allegedly suffered is speculative or not. Because it's not just that Mr. Riffin had to go through the process, prepare his financial offer, receive this information. His interest ultimately is in acquiring the rail line. And so if he has no chance of acquiring the rail line, then any injury he suffered along the way wouldn't really help him in his ultimate goal. If it had changed and he hadn't suffered that injury, it wouldn't help him in actually vindicating his interest that he's basing his injury on. And so because in this case, it was clear from the record that there had been no traffic on the line for five years. There's no shippers on the line. Let's imagine an agency says, we have a piece of real estate here that we're selling to the public, interested members of the public. Here's a bidding process. There'll be a process for vetting the bids. We'll examine them. We'll look at the best offer, but it won't just be money. We'll look at how it's planned to be used. It's going to be sort of a complicated review process, but members of the public are invited to submit bids unless they are Jehovah's Witnesses. Standing to challenge that if you're a Jehovah's Witness? Yes. And you wanted to buy that property? Yes. Because you wanted to have a fair chance to compete to buy that piece of property? Yes. Even though it's not guaranteed that you're going to get the piece of property at the end of the day? We don't consider that too speculative in that situation, right? Yes. I would raise two differences, I think. Yes, there is standing there, and I'd raise two differences between that case and this case. First of all, I think there may be an independent injury based on the simple fact of the discrimination and without getting too into the weeds in that doctrine, I think. We'll take out the first amendment. We'll just say, but here's a list of people we don't like. Here's a list of 50 people we don't like for personal reasons, the board members' personal reasons. They can't bid. Different standing answer? Still, I believe so. It's still standing. But I think it's because we're not, the injury to compete is not something, I think, that is really suggested by the financial offer statute, that this is more of a regimented process, which certain qualifications have to be met, that it's about a certain line of railroad that has its own characteristics that are part of that financial offer process. And it's possible, as with here, that for some lines of railroad, no financial offer would succeed simply because there's no chance of rail service ever being restored without. Okay. My colleagues, thank you for helping with that. If you don't have any further questions, thank you for directing it. Thank you, Your Honor. Okay, Mr. Griffin, we'll give you two minutes. Thank you, Your Honor. Can you hear me? Yes. I don't know if you noticed me smiling there while you were talking about someone not liking the person. If you read the board's and intervener's briefs, you may deduce I'm not well-liked by either the board or the intervener. And that's primarily because I tend to challenge a lot of their decisions. The whole reason for this 1152.27 revision in 2017 is because of me. Everything in there other than the credit card thing, they were my decisions. Move on. You asked when I was first here, can I give you a statute or at least a case to back up my point? I can. I should have. It's on page 16 of my supplement if you happen to want to look at it, but it's the Conrail abandonment of a portion of the West 30th Street secondary track in New York, it's docket number AB167, that's Conrail, 493N. And in that case, the ICC said where third parties have acquired rights or interest in the outcome of an abandonment proceeding request, the SDB may deny a railroad's request to withdraw a filing if the agency finds it is in the public interest to do so. I actually discussed that in my reply brief on pages 17 and 18. And in this particular case, I am saying that the board needed to address the public issue, the public interest issue in a decision because rights had vested in a third party, namely me. This is definitely not a routine proceeding. Contrary to what counsel for the SDB said, the SDB no longer routinely rejects abandonment petitions when they contain false statements. They used to. 20 years ago when I started doing this, Conchita was in charge of the proceeding then. It never would have even made it to the board's website. I can tell you I keep referring to this other case. It's AB1344 is the case. It's out in Colorado. You're probably going to see it again. You're probably going to see it because the same thing has happened there. False statements were made. The board is aware of these false statements. The board has not rejected it. The board doesn't want to reject it. The board did not want to reject this one. So they didn't. Had they rejected it, I would have been comfortable with that, but they didn't. Thank you. I think you're over your rebuttal time now. My colleagues don't have any further questions. Well, thank you. I can't hear you quite. You're saying you're over. You've exceeded your rebuttal time now, but we appreciate your arguments here today, arguments of all counsel, and the case is now submitted. Thank you. Thank you, your honors. Thank you for giving me the time to chat.
judges: Millett; Pillard; Katsas